294

PETER De MET, Appellant, v. I. MILTON ZEMAN, SAWYER A. TULLER, ELI BOYER, DAVID GOLDBERG, ALLAN LANDMAN, CHARLES CHAZEN, DAVID A. MESSING, REUBEN D. GRUBER, ARNOLD L. LIPKIN, DANIEL LEM-BARK, and HOWARD W. BROTMAN, a Partnership dba ZEMAN, TULLER, BOYER & GOLDBERG, Respondents.

No. 6235

June 24, 1971                                   486 P.2d 487

[Rehearing denied August 3, 1971]

*Wiener, Goldwater, Galatz & Raggio, Ltd.* and *J. Charles Thompson,* of Las Vegas, for Appellant.

*Lionel Sawyer Collins & Wartman,* of Las Vegas, for Respondents.

## OPINION

By the Court, GUNDERSON, J.:

Respondents, a firm of accountants, obtained the following judgment against appellant Peter De Met and others:

"ORDERED, ADJUDGED AND DECREED that the plaintiffs recover judgment against PETER DE MET, LOUIS LARAMORE, HAROLD V. CLARK and J. A. DONNEL-LEY, as Executors of the Estate of WILBUR I. CLARK, deceased, a partnership, d/b/a C. D. L., NEVADA, and PETER DE MET, individually, in the sum of $52,516.16, interest in the sum of $15,483.64, and costs taxed in the amount of $304.65."

The evidence does not support the judgment, under any construction of such pleadings as are now before the court; thus, we need not decide whether the lower court, having allowed respondents to amend their Complaint on the morning of the trial, erred in refusing to continue the trial so that appellant might plead anew. We reverse and remand the cause, with instructions to allow appellant to raise, by appropriate pleadings and procedures, any and all defenses he may have to the Complaint as amended.

For some time prior to December 31, 1961, Wilbur I. Clark, now deceased, appellant Peter De Met, and one Louis Laramore, did business as "Clark, De Met and Laramore," which they styled a "joint venture." As of January 1, 1962, they commenced doing business as "C. D. L., Nevada," which they styled a "partnership." In 1962, respondents commenced doing accounting work for "C. D. L., Nevada," and for various corporations in which Wilbur I. Clark, Peter De Met, and Louis Laramore were interested, one being World Wide Construction Co., Inc. These entities had interrelated business interests; World Wide Construction Co., Inc. held the contractor's license used in their endeavors, and apparently was the entity through which business bills were commonly paid; respondents allocated these bills to the other entities through accounting procedures. Such money as respondents were paid for their services was on a statement for $4,675, dated June 1, 1963, submitted to and paid by World Wide Construction Co., Inc.

Eli Boyer, a member of respondents' accounting firm, testified that appellant De Met withdrew from his partnership with Clark and Laramore "sometime in May, 1964," and that Boyer was "aware of the termination of the partnership at or about the same time the same was terminated." Apparently Clark and Laramore agreed to pay De Met for his interests, and at some point one or both agreed to indemnify him against claims arising from their mutual endeavors. With knowledge of De Met's withdrawal from "C. D. L., Nevada" and related corporations, respondents continued to do accounting work, for which they submitted billings every two weeks. At some point in time, respondents apparently ceased billing World Wide Construction Co., Inc. At trial, for the expressly limited purpose of showing "demands," respondents offered into evidence statements they had ostensibly mailed during 1965 to the address used in common by the various entities; five directed to "Clark, De Met and Laramore," and one to "CDL Nevada." It is clear that these statements could not constitute "demands" upon De Met because, as respondents well knew, he was not doing business either at that address, or under those names.

After Wilbur Clark's death, respondents filed a creditor's claim with his estate, and on July 20, 1967, commenced the instant action against "Peter De Met, Louis Laramore, and J. A. Donnelley and Harold V. Clark as Executors of the Estate of Wilbur I. Clark, deceased, *a partnership d/b/a Clark, De Met and Laramore.*" (Emphasis added.) The "First Claim" of this Complaint alleged that "[w]ithin the past four (4) years," defendants had become indebted to plaintiffs in the sum of $52,285 as the reasonable value of accounting services rendered. The "Second Claim" alleged that "[w]ithin the past four (4) years at Los Angeles, California, an account was stated in writing by and between Plaintiffs and Defendants wherein it was agreed that Defendants were indebted to Plaintiffs" in this sum. The "Third Claim" alleged that the services in question had been rendered "on an open book account." The "Fourth Claim" alleged that "[w]ithin the past two (2) years," defendants had become indebted to plaintiffs in the sum of $276.16 "for money paid, laid out and expended for Defendants at their request." The Complaint alleged neither the nature of the services, nor the dates they were performed. It neither suggested that respondents might claim compensation from Peter De Met for services rendered to corporations in which he had been interested along with Wilbur I. Clark and Louis Laramore, nor that they sought payment from De Met for services rendered to Clark and Laramore after De Met

withdrew from partnership with them. Indeed, the Complaint even could be read to claim compensation only for services rendered to "Clark, De Met and Laramore," the original "joint venture."

By serving J. A. Donnelley with a writ of attachment, respondents purportedly attached moneys due De Met upon a judgment against the Estate of Wilbur I. Clark, evidently owing to appellant as settlement of his mutual interests with Clark; however, although respondents' counsel apparently recognized the need to make Clark's estate a party to the action, they did not serve Donnelley with the summons and Complaint. Instead, they only sought quasi in rem jurisdiction over De Met, who was in Florida, by publication of the summons. In due course, he filed an Answer, denying all allegations of the Complaint, and alleging no Counterclaim.[1]

On the morning this action was to be tried, by motion filed the previous day, respondents asked to amend the caption and body of their Complaint to name defendants as: "PETER De MET, LOUIS LARAMORE, and J. A. DONNELLEY and HAROLD V. CLARK, as Executors of the Estate of WILBUR I. CLARK, deceased, *a partnership d/b/a C. D. L., NEVADA.*" (Emphasis added.) Appellant's counsel objected, and also moved the court for time to plead to the Complaint as amended, should amendment be permitted. The lower court permitted the amendment, but denied appellant time to plead. The trial proceeded; the lower court allowed respondents to adduce proof of work done for C. D. L., Nevada, and for the other entities in which its principals had been interested, including work done after De Met's withdrawal from their affairs. Judgment was entered for the total amount of this work.

1. Even if respondents' Complaint, as amended, be construed to claim recovery from De Met for services rendered to all the various entities in which "C. D. L., Nevada" and its principals were interested, the Complaint still sought payment only for services rendered within four years from the date it was filed, i.e. July 20, 1967. Evidence of charges prior to the

---

[1] NRCP Rule 13 (a) requires that certain claims be stated as counterclaims, but provides, among other things, that the pleader need not state such claims if *"the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim,* and the pleader is not stating any counterclaim under this Rule 13." (Emphasis added.) The effect of this rule upon jurisdictional issues raised by appellant has not been briefed for the benefit of this court.

time concerned in the Complaint was ruled relevant for the limited purpose of showing the "history" of the parties' course of dealing. Thus, respondents manifestly could not be allowed recovery for work done prior to July 20, 1963. When a creditor has actual notice of the dissolution of a partnership, the retiring partner normally is not liable for services rendered thereafter to the remaining partners, and this is so even though notice of dissolution [NRS 87.350(1)(b)(2)] was not published. Carvalho v. McCoy, 276 P.2d 21 (Cal.App. 1954); Dome v. Maggard, 265 S.W.2d 454 (Ky.App. 1954). Thus, the lower court clearly erred in allowing respondents recovery for work done after the time, about May of 1964, when they learned of appellant's aforementioned withdrawal. For these reasons alone, further proceedings in the lower court are required to determine what sum, if any, respondents may recover from appellant De Met.[2]

2. From the testimony of respondents' witnesses, it appears respondents rendered their statements "at two week billing periods," entering the amounts billed in red on their books of account. Thus, it was erroneous for the lower court to allow interest on what respondents themselves alleged to be, and what evidently was, an "open book account." NRS 99.040(1); Flannery v. Anderson, 4 Nev. 437 (1868); cf. Checker, Inc. v. Zeman, 86 Nev. 216, 467 P.2d 100 (1970).

3. Appellant contends the lower court erroneously denied him time to plead to respondents' Complaint as amended, and that he might have plead various defenses, as well as claiming over against Louis Laramore and the estate of Wilbur I.

---

[2]Respondents' Exhibit 8, a recapitulation of respondents' account of work done for all entities, reflects billings for some $17,076.50 worth of services between July 20, 1963, and the beginning of May, 1964. If services through the end of May, 1964, are included, the total is some $22,789.50. Thus, even if we could resolve in respondents' favor all other issues raised by the parties, we could not adjust the parties' rights without remanding the cause, for the right to more than $5,000 would remain in serious question. Appellant contends that the most respondents may recover from him is some $3,000, because our statute of frauds, NRS 111.220, declares void "every special promise to answer for the debt, default or miscarriage of another," unless the same be in writing. The statute of frauds is an affirmative defense, NRCP 8(c), which it will be necessary for appellant to plead, and the applicability of which we do not decide.

Clark.[3] Respondents contend appellant was not injured, propounding numerous theories in support of this view. There being no need, we decline to decide in the first instance on appeal, in their absence, the sufficiency of pleadings that have never been passed upon by the lower court. On remand, the lower court is instructed to allow appellant to raise, by appropriate pleadings and procedures, any and all defenses he may have to the Complaint as amended, and to cross claim against his codefendants as his rights may permit. As this will not now cause a trial date to be vacated, there is now no reason to deny appellant the opportunity to present his theories in the usual fashion.

The judgment is reversed, and the cause is remanded for proceedings in conformity with this Opinion.

ZENOFF, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.

---

[3]For example, appellant apparently contends that in a quasi in rem action, the court has only such jurisdiction as it obtains through attachment of a defendant's property, that in this State a debt due from an estate may not be garnished or attached in the hands of an executor or administrator [Howard's Estate, 48 Nev. 100, 227 P. 1016 (1924)], and that therefore the court lacked jurisdiction over the subject matter of the action. If so, if some statute of limitations bars the claims now stated, if the statute of frauds is applicable to them, or if respondents' failure to proceed against appellant's former partners affords him a defense or right of abatement, we see no reason why such defenses may not be tendered by pleadings framed for the purpose. Similarly, if appellant is entitled to indemnity against respondents' claims by virtue of an agreement with his former partners, or to contribution from them, these rights may be asserted against his codefendants by cross claim. NRCP 13(g). In like manner, our rules afford respondents opportunities to avoid the burden of litigating any insufficient defense, e.g.: NRCP 8(d), 12(f), 56.