318 P.2d 642

Lowell E. PARRISH, Plaintiff and
Respondent,

v.

Theodore H. TAHTARAS, and Josephine
Tahtaras, Defendants and Appellants.

No. 8514.

Supreme Court of Utah.

Nov. 26, 1957.

Bernard L. Rose, A. H. Hougaard, Salt Lake City, for appellants.

Pugsley, Hayes & Rampton, Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

Defendants appeal from an adverse judgment in an action by an architect, Lowell Parrish, for the value of his services in designing and planning a home for defendants, Mr. and Mrs. Tahtaras.

Defendants assail the findings of the trial court, sitting without a jury, the sufficiency of the findings of the court to support the judgment, and the introduction of evidence based on quantum meruit, which was unpleaded until the complaint was amended. Plaintiff stands both on the sufficiency of the record to support the findings, and on the contract of services, including application of the doctrine of quantum meruit

■ Since the court made findings and entered judgment based thereon, it is our duty to review the evidence in a light most favorable to the findings.[1] In reciting the facts, therefore, we state them as found by the trial court so long as the record shows some competent evidence from which such findings could derive.

In April of 1954, Mr. and Mrs. Tahtaras engaged the services of architect Lowell Parrish to design for them a custom residence on a lot owned by defendants in Indian Hills Subdivision, Salt Lake City, Utah. The court found that under the agreement the total cost of said residence should not exceed $65,000, including architect's fees. This cost limitation, however, was set orally after the signing of a standard architect's contract, and there is evidence to support a finding that no other lower figure was discussed prior thereto. Between April, 1954, and January, 1955, plaintiff prepared the drawings and specifications, consulted with defendants, directed certain alterations and prepared thereafter the final sketches, drawings and specifications for the home on defendants' lot. Bids were called for. They ranged from $73,280 to $90,000. At all times the plaintiff was ready, willing and able to reduce the plans to meet the cost limitation of $65,000 imposed by the above described mutual oral agreement, and in fact made,

under direction of defendants, one subsequent alteration in the plans after being directed by the defendants to "go ahead do what is necessary." Thereafter he resubmitted them for rebidding. On January 14, 1955, after defendants had rejected the rebids, they notified plaintiff of their intention to abandon the project of constructing a residence; and thereafter nothing further was done with the plans. Immediately plaintiff sent a bill for services up to that point. Defendants had paid $1,300 to Mr. Parrish, and when they refused to pay the balance, plaintiff brought this action to recover damages by reason of the contract breach. Defendants counterclaimed for the $1,300 alleging a nonperformance on Parrish's part in failing to keep within either a $40,000 limit or the $65,000 limit. The trial court, as recited above, found no limitation of $40,000 imposed, found a cost limitation of $65,000, including architect's fees, found plaintiff ready, willing and able to perform his part of the contract, and awarded damages in the sum of $1,709.27 on the theory of quantum meruit, after granting a motion to amend the pleadings to conform to the proof.

The following should be observed with respect to the cost limitation found by the trial court. The only place in the record where a cost limitation of $65,000 is to be found is in the testimony of the plaintiff.

1. Lawrence v. Bamberger Railroad Co., 3 Utah 2d 247, 282 P.2d 335.

This is to the effect that after the plans and specifications were completely prepared and submitted to the defendants, a discussion was had with respect to the probable cost. In connection therewith, Mr. Tahtaras stated that he would be willing to go as high as $65,000. True, the findings of fact of the trial court would indicate that he concluded that there was a $65,000 limitation, including architectural fees, at the time of the authorization to prepare the plans. However, this must have been inferred by the trial court from the conversation testified to subsequent to the drawing of the plans and from evidence offered as to the general custom of architects relative to having an approximation of costs before commencing his work as an architect. It is mentioned because at that time a great portion of the plaintiff's work as an architect, other than the supervision of construction, had been then completed.

Under the facts found by the trial court, we confront the question of whether the architect may prevail in an action for his services rendered under a contract or by quantum meruit, in the alternative.

It is the general rule that an architect may not recover for services rendered when his contract of employment specifically limits the total construction cost to an amount stated as a conditional cost limitation, without complying substantially with such condition. Wetzel v. Roberts, 296 Mich. 114, 295 N.W. 580; Zannoth v. Booth Radio Stations, Inc., 333 Mich. 233, 52 N.W.2d 678; Annotation 127 A.L.R. 410. However, such general rule is not here applicable. The defendants abandoned by an unequivocal act the project after they had told plaintiff to go ahead and modify the plans to come within the cost limitations set, and while plaintiff remained ready, willing and able to proceed with such modifications for a second time, the first modification having been rebid and rejected by the defendants. In the case of abandonment by the owners of their contract with an architect, where the architect is in the process of fulfilling the conditions under his contract for services, the architect may bring an action for damages on the contract, or in the alternative, sue in quasi contract under the theory of quantum meruit. Bebb v. Jordan, 111 Wash. 73, 189 P. 553, 9 A.L.R. 1035. This is but an application of the general rule of contracts, which, in reference to the factual situation here confronted, is aptly stated in 3 Corbin on Contracts, page 953, as follows:

"It is to be observed that since the defendant's duty to pay was originally conditional on a performance by plaintiff, the defendant's refusal to pay would not have been wrongful except for the fact that the nonperformance of the condition was unjustly caused by himself. It is his prevention of per-

formance of the condition that makes his refusal to pay a breach of contract. Prevention eliminates the condition, for purposes of remedy. But the extent of that remedy is governed by the usual remedial rules. If the defendant's prevention has saved some expenditure on the plaintiff's part, the amount of that saving must be deducted from the full contract price. It is only the balance to which judgment will be given as damages for defendant's breach."

The alternate remedies, although formerly limited by a strict election doctrine, may be pleaded in alternative form and may even be inserted by amendment late in the proceedings. Taylor v. E. M. Royle Corp., 1 Utah 2d 175, 264 P.2d 279; U. R.C.P. Rule 54(c) (1); Restatement of Contracts, Section 381, Comment b. By the use of the alternative pleading of restitution asked under quantum meruit, a total breach of the contract may result in rescission with the remedy of restoration of that which is owing the parties for their reliance on the contract. Thompson v. Miller, 101 Vt. 452, 144 A. 376. In the case of services performed in reliance on the contract which is later abandoned by the defendants allows a reasonable value for the worth of said services, regardless of the value received by the breaching party. Williston, Contracts, Sections 1459, 1460, 1480; Restatement of Contracts,

Section 347; Bebb v. Jordan, 1920, 111 Wash. 73, 189 P. 553. It was not error for the trial judge to allow amendment late in the proceedings to show this alternative plea, the defendants not being in any way prejudiced by the ruling.

Furthermore, whether the judgment be viewed as an application of doctrine of quantum meruit or as compensation for part performance under the contract in accordance with the doctrine enunciated in the quotation from Corbin above, the judgment is supported by the record. Under the Standard Form Agreement signed by the parties it is provided: "If any work designed or specified by the architect is abandoned or suspended, in whole or in part, the architect is to be paid for the services rendered on account of it."

Under another provision of such agreement it is provided that from time to time during the progress of the architect's work, payments should be made in such amounts that the architect shall have received 75% of the total compensation at the completion of the general working drawings and specifications. What the court below did was to compute the total compensation payable had the contract been fully performed. He then deducted from that amount 25%, since after abandonment of the contract by the defendants, the supervisory work provided for in the contract would not have to be performed by the

architect. A further deduction of one-eighth of the total compensation was made to compensate for the fact that further modification of the plans and specifications would not have to be made. Defendants assert that the record is devoid of evidence to support this last computation. It is true that no direct evidence was given with respect to such percentage deduction. However, in view of the plaintiff's uncontradicted testimony with respect to the value of the services rendered, the appellants are in no position to complain about that specific deduction. The judgment is supported by the evidence. It is therefore affirmed. Costs to respondent.

CROCKETT, WADE, WORTHEN and HENRIOD, JJ., concur.