ROMY HAMMES, INC., APPELLANT, v. McNEIL CON-
STRUCTION COMPANY, RESPONDENT.

No. 7469

February 28, 1975                    532 P.2d 263

---

*Lee and Beasey,* of Las Vegas, for Appellant.

*James L. Buchanan, II,* and *Beckley, Singleton, DeLanoy & Jemison, Chartered,* of Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

The plaintiff, McNeil Construction Company, commenced this action to recover the reasonable value of services it had

performed at the special instance and request of the defendant, Romy Hammes, Inc., in connection with the contemplated construction of a medical building to be called the Las Vegas Medical Tower. The services for which compensation is sought were performed over a period of about two years. The project finally was abandoned, and the medical building was never constructed. A jury favored the plaintiff with its verdict in the amount of $114,109.14, and judgment was entered thereon. This appeal by Romy Hammes, Inc., challenges the sufficiency of the evidence to support a quantum meruit recovery and, as well, the money awarded.

1. The appellant's challenge to the sufficiency of the evidence to support a quantum meruit recovery must fail. No purpose will be served by reciting in detail the history of the contemplated project from inception to abandonment. It is sufficient to state that the testimony of the president of McNeil Construction Company reflects that all services performed in connection with the project were performed at the express direction of Romy Hammes, Inc., acting through its president, Romy Hammes. Such testimony alone provides requisite support for the jury's apparent conclusion that the services were performed at the special instance and request of Romy Hammes, Inc. Wilkins v. Capurro, 72 Nev. 49, 293 P.2d 427 (1956).

2. The jury verdict of $114,109.14 evidently was based upon the itemized final statement submitted by McNeil Construction Company to Romy Hammes, Inc., in that amount.

Among the many items contained in that statement are three to which particular objection is raised. They are the fees charged by the architectural, structural and mechanical engineering firms.

With respect to the architectural firm of Hoops-Gardiner-Van Osdol, the agreement was to pay a fixed fee of $20,000 for the preparation of working plans required for a building permit, and if the project did not proceed further, such sum would constitute payment in full. The agreement also provided that if the project did proceed, and final plans and specifications were prepared, and the building was constructed, then the architects were to be paid a fee in the amount of 2.5 percent of the total construction value. The agreement did not provide for the circumstance in which the project went beyond

the working plans necessary for a building permit and full construction plans were prepared but the building was not actually constructed. That is the circumstance presented here.

The architects submitted a bill to McNeil Construction for $60,300 representing 2.5 percent of the estimated cost of construction less the amount that would have been required for inspection and supervision had the building actually been constructed. This was a reasonable basis for calculating the value of services in quantum meruit. Stacy-Judd v. Stone, 12 P.2d 143 (Cal.App. 1932); Parrish v. Tahtaras, 318 P.2d 642 (Utah 1957).

The contention of the appellant that the fee for the architects should have been limited to $20,000 rests upon a provision of the agreement that does not cover the circumstance presented, and is, therefore, rejected.

A similar agreement was made with Brandow & Johnston Associates, structural engineers. That firm was to be paid a fixed fee of $20,000 for the preparation of plans needed for a building permit, and a fee of 1 percent of the construction costs if the building was constructed. The agreement did not contain a provision covering the circumstance where full construction plans were prepared but the building was not constructed. Their bill was for $27,000 and represented 1 percent of the estimated construction costs. As already stated, this was a permissible manner by which to measure the reasonable value of their services. The $20,000 fixed fee proviso is not apposite to this case.

Finally, the same general arrangement was made with the mechanical engineers, Ellers & Reaves. That firm also had prepared full construction documents. The agreement called for a fee of $10,000 for the preliminary plans for a building permit, but if the building was constructed and final plans were required, then a fee of 3 percent of the structual, mechanical, electrical and plumbing work would be paid. The agreement made no provision for the circumstance in which the design went beyond that needed to obtain a building permit, and full plans were prepared, but the building was not constructed.

The bill of the mechanical engineers was for the sum of $14,000 representing 3 percent of the estimated subcontractors' bids for structural, mechanical, electrical and plumbing work. As in the other instances, this too was an appropriate way to

determine the reasonable value of services performed. The $10,000 fee provision simply does not apply to the facts presented.

Other assigned errors are without merit.

Affirmed.